**WALLIS, Immigration Com'r, v. UNITED STATES ex rel. MANNARA et al.**

(Circuit Court of Appeals, Second Circuit. May 11, 1921.)

No. 207.

**1. Aliens ⊂⟶49—Court cannot relieve immigrant from deportation on giving bond against becoming a public charge.**

A court is without authority to discharge an immigrant, refused admission and held for deportation on the ground that he is likely to become a public charge, on his furnishing a bond conditioned that he will not become such charge.

**2. Aliens ⊂⟶54—Order of deportation not reviewable if supported by any evidence.**

A court in a habeas corpus proceeding can review the decision of immigration officers, made after a fair hearing, excluding an immigrant on the ground that because of his physical and financial condition he is likely to become a public charge, only for lack of any evidence to support it.

**3. Aliens ⊂⟶49—"Person likely to become public charge" defined.**

A "person likely to become a public charge" is one whom it may be necessary to support at public expense by reason of poverty, insanity and poverty, disease and poverty, or idiocy and poverty.

Appeal from the District Court of the United States for the Southern District of New York.

Habeas corpus by Salvatore Mannara and Rosaria Mannara against Frederick A. Wallis, Commissioner of Immigration. From a decree granting the writ, defendant appeals. Reversed.

Francis G. Caffey, U. S. Atty., of New York City (Keith Lorenz, Asst. U. S. Atty., of New York City, of counsel), for appellant.

Myron Krieger, of New York City, for appellees.

Before ROGERS, HOUGH and MANTON, Circuit Judges.

MANTON, Circuit Judge. The appellees sued out a writ of habeas corpus, asking a review of an order of deportation made by the Commissioner of Immigration and subsequently approved on appeal by the Secretary of Labor. Both appellees, subjects of the kingdom of Italy, arrived in the United States on the steamship Madonna on September 7, 1920. Salvatore Mannara was 54 years of age and Rosaria Mannara was his daughter. They were accompanied by a son and brother, Antonio. While at Ellis Island, Salvatore and Rosaria were examined by the medical examiner and were found physically defective. The medical certificate in the case of Salvatore specifically specified senility, which may affect ability to earn a living, and in the case of Rosaria, grave valvular disease, chronic and cardiac, which may affect ability to earn a living.

On September 8, 1920, Salvatore was given a hearing and testified that, in addition to the son and daughter accompanying him, he had a wife and three children in Italy; that he and his son were laborers, and his daughter was a dressmaker. He stated he had $100 and was coming to his two brothers. Both brothers testified to the same effect, and said they were fully able to support Salvatore and his two children, and declared their intention so to do. The Board of Special Inquiry

⊂⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

excluded Salvatore and his two children, and advised them of their right to appeal from its decision to the Secretary of Labor in Washington for a review of the case. Their finding is found in the following language:

"It is the unanimous opinion of the Board that the aliens are likely to become a public charge, for the following, among other, reasons: They arrive here with a small amount of money, insufficient to provide for their necessary wants any reasonable length of time; they have no one in the United States who could be held legally liable for their maintenance; the father is 54 years of age, certified for senility, and would not be capable of continued self-support; we further find that the certified condition of the father and daughter is of such a nature as will affect their ability to earn a living."

The order of deportation was approved by the Acting Secretary of Labor "after carefully considering the evidence presented in the record," and deportation was directed.

[1, 2] The order below directed the discharge. The decision on the writ provided:

"Relators released upon giving a bond for $1,000 for each relator; condition, none will become a public charge."

We know of no provision of law which warrants a release upon bond. If the appellees were entitled to enter the country, and therefore to their discharge, they were entitled to enter free from the condition of a bond. Immigration Act 1917, § 3, provides (39 Stat. 874 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼b]):

"Sec. 3. That the following classes of aliens shall be excluded from admission into the United States: * * * Persons not comprehended within any of the foregoing excluded classes who are found to be and are certified by the examining surgeon as being mentally or physically defective, such physical defect being of a nature which may affect the ability of such alien to earn a living * * * persons likely to become a public charge * * *"

There is a finding by the Board of Special Inquiry, which is approved by the Department of Labor, certifying to a physical condition of both of the relators, which may affect their ability to earn a livelihood. There is evidence to support this finding that the relators were likely to become public charges. The court's jurisdiction, when the remedy of a writ of habeas corpus is invoked in immigration cases, is to inquire whether the ground of exclusion given by the administrative authorities is without any evidence to support it. Unless there is no evidence at all proving or tending to prove that an alien is within one of the excluded classes, the decision of the immigration authorities is conclusive upon the court, even though the evidence to the contrary be very strong. In Low Wah Suey v. Backus, 225 U. S. 460, 32 Sup. Ct. 734, 56 L. Ed. 1165, the court said:

"A series of decisions in this court has settled that such hearings before executive officers may be made conclusive when fairly conducted. In order to successfully attack by judicial proceedings the conclusions and orders made upon such hearings, it must be shown that the proceedings were manifestly unfair, that the action of the executive officers was such as to prevent a fair investigation, or that there was a manifest abuse of the discretion committed to them by the statute. In other cases, the order of the executive officers within the authority of the statute is final."

[3] A person likely to become a public charge is one whom it may be necessary to support at public expense by reason of poverty, insanity and poverty, disease and poverty, idiocy and poverty. Ex parte Mitchell (D. C.) 256 Fed. 229. We think that the finding by the administrative authorities, showing a physical defect of a nature that may affect the ability of the relator and appellee to earn a living, is sufficient ground for exclusion. His physical condition, together with his financial condition, having but $100 with him, justified the conclusion of the administrative authorities in finding that he and his children were aliens likely to become public charges. Howe v. United States, 247 Fed. 292, 159 C. C. A. 386.

The order sustaining the writ is reversed, with directions to dismiss the writ, and that the appellees be remanded to the custody of the appellant, to be deported to the country from whence they came in conformity with the law.